(Not for publication) (Docket No. 62 )

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | | |
|---|---|---|
| LISA A. EVANS, | : | |
| Plaintiff, | : | Civil No. 03-4915 (RBK) |
| v. | : | **OPINION** |
| EMPLOYEE BENEFIT PLAN, CAMP DRESSER & MCKEE, et al., | : | |
| Defendants. | : | |

**KUGLER**, District Judge:

Presently before the Court is Plaintiff Lisa A. Evans' appeal of a decision by Magistrate Judge Joel B. Rosen. Specifically, Plaintiff appeals Judge Rosen's denial of Plaintiff's motion to compel a more responsive answer to Plaintiff's Interrogatory No. 1. For the reasons that follow, the Court will deny Plaintiff's appeal.

**I. BACKGROUND**

**A. Plaintiff's Employment with CDM and Benefits Dispute with MetLife**

Plaintiff Linda A. Evans is a former employee of Defendant Camp Dresser & McKee, Inc. ("CDM"). In April 1997, Plaintiff began employment with CDM as a full-time Environmental Engineer. (Compl. ¶ 9.) According to Plaintiff, her duties as an Environmental Engineer required her to perform "hazardous waste operations fieldwork." (Compl. ¶ 12.)

As a CDM employee, Plaintiff participated in CDM's Employee Benefit Plan ("the Plan"). The Plan included long term disability ("LTD") coverage paid for by CDM and also provided employees with the option of purchasing short term disability ("STD") coverage. (Compl. ¶ 11.) Plaintiff allegedly purchased STD coverage. (Compl. ¶ 11.)

Defendant Metropolitan Life Insurance Co. ("MetLife") is the fiduciary charged with funding and administering the Plan for CDM. (See Compl. ¶ 28; Def. Opp. at 3.) CDM's application for MetLife group insurance demonstrates that CDM applied for basic life insurance, optional life insurance, short term disability, and long term disability insurance for employees only. (See CDM application attached to Pl. Mem. at Exhibit A.) On the application, under the section entitled "Types of Financial Arrangements Requested," there are three financial arrangements listed, including "Excess Risk," "Excess Risk and Special Premium Account," and "Retrospective Premium Determination." It appears that CDM did not select any of these three arrangements because there is no "X" in any of the three boxes next to these three options. (See CDM application attached to Pl. Mem. at Exhibit A and attached to Pl. 11/3/05 Motion to Compel at Exhibit E.)

Plaintiff alleges that she ceased working at CDM due to respiratory problems that prevented her from performing certain kinds of fieldwork. Her last date of active employment with CDM was January 7, 2000. (Compl. ¶ 14.) On January 22, 2000, Plaintiff submitted an Employee Disability Statement to MetLife indicating that she suffered from shortness of breath, chest congestion, and difficulty breathing. (Compl. ¶ 15.) In March 2000, Plaintiff claims she was diagnosed with asthma and received a medical opinion that she could not return to fieldwork that would expose her to asthma triggers. (Compl. ¶ 16.) In April 2000, Plaintiff claims she notified CDM that she could return to work only if she did not have to perform "fieldwork

secondary to asthma triggers." (Compl. ¶ 18.) CDM allegedly responded that Plaintiff's job required such fieldwork. (Compl. ¶ 19.) Plaintiff also claims that she notified MetLife of the fieldwork requirement in April 2000. (Compl. ¶ 19.)

MetLife then paid Plaintiff STD benefits from January 10, 2000 through April 16, 2000 in accordance with the terms of the Plan. (Compl. ¶ 21.) However, MetLife apparently denied Plaintiff LTD benefits in a final decision dated October 18, 2000. (Compl. ¶ 33.) Shortly thereafter, on January 7, 2001, CDM terminated Plaintiff because of her inability to perform fieldwork. (Compl. ¶ 23.)

On October 17, 2003, Plaintiff initiated the current lawsuit against MetLife, CDM, the Plan, and CDM's Board of Directors. Among other things, Plaintiff alleges that MetLife "willingly, knowingly, and inconsistently referenced the wrong job description . . . to deny Plaintiff's LTD benefits on appeal, misconstrued medical records, and arbitrarily added an etiology requirement to the LTD Plan's definition of disability." (Compl. ¶ 18.) The Plaintiff seeks LTD benefits under the Plan, pre- and post-judgment interest on any LTD benefits due, and other equitable relief. (Compl. ¶ 67-74.)

### B. Dispute over Interrogatory No. 1

During discovery, Plaintiff submitted Interrogatories and document requests to MetLife. Interrogatory No. 1 states:

> Page number 001112 of Plaintiff's Disclosure is an Application for Group Insurance. (See Plaintiff's Motion to Compel Discovery filed on November 3, 2004, Exhibit E.) An X appears in the box under Types of Financial Arrangements Requested next to Excess Risk and Premium Account, although it is unclear. Please describe the types of financial arrangements that appear under this title "Types of Financial Arrangements" and describe how the type of financial arrangement for this Policy was determined. Did this determination have anything to do with knowledge that CDM had employees who worked with hazardous materials?

(See Pl. Mem. at 1; Def. Opp. at 1-2.) After Plaintiff filed a motion to compel discovery, Judge Rosen held a phone conference and ordered MetLife to respond to all outstanding interrogatories no later than April 1, 2005. (See Order dated 3/10/05, at D.E. # 34.) MetLife then responded to Interrogatory No. 1 stating:

> MetLife objects to this interrogatory as being vague, ambiguous and subject to multiple and conflicting interpretations. MetLife further objects to this interrogatory to the extent that it seeks information which is beyond the administrative record and, accordingly, seeks information which is not relevant or reasonably calculated to lead to the discovery of relevant information relating to any party's claims or defenses with respect to this matter. Subject to and without waiver of the foregoing objection, MetLife responds as follows: The Camp, Dresser & McKee long-term disability plan in effect at the time of Evans' claim was funded by a group policy issued by MetLife to Camp, Dresser & McKee.

(See Def. Mem. at 2.) In an Order dated September 7, 2005, Judge Rosen found that "this response fully comports with the defendant's obligations under Pinto v. Reliance Standard Insurance Company, 214 F.3d 377 (3d Cir. 2000) as well as this court's previous orders." (Order dated 9/7/05, at D.E. # 49.) After Plaintiff filed a motion for reconsideration which Judge Rosen denied, Plaintiff filed the present appeal of Judge Rosen's decision to deny her motion to compel as it pertains to Interrogatory No. 1. In her appeal, Plaintiff argues that Interrogatory No. 1 seeks information within the scope of permissible discovery in ERISA actions of this type, and further that MetLife's response to Interrogatory No. 1 does not sufficiently answer the question asked. On November 8, 2005, the Defendant filed a letter brief in opposition challenging the additional information sought in Interrogatory No. 1 as irrelevant or undiscoverable information. The Plaintiff thereafter filed a reply on November 18, 2005.

## II. STANDARD OF REVIEW

This Court has appellate review over the Opinions and Orders of magistrate judges pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Rule 72.1(c) of

the Local Rules of the United States District Court for the District of New Jersey.  Matters referred to a magistrate judge pursuant to 28 U.S.C. § 636(b) are subject to two standards of review: (1) a "clearly erroneous or contrary to law" standard for non-dispositive matters, and (2) a de novo standard for dispositive matters.  Nat'l Labor Relations Board v. Frazier, 966 F.2d 812, 816 (3d Cir. 1992).  Rulings on discovery motions, like the one at issue in the present appeal, are considered non-dispositive matters subject to the clearly erroneous standard of review.  Jackson v. Chubb Corp., 45 Fed. Appx. 163, 166 n.7 (3d Cir. 2002).

     A ruling is clearly erroneous when, "although there is evidence to support it, the reviewing Court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); South Seas Catamaran, Inc. v. Motor Vessel Leeway, 120 F.R.D. 17, 21 (D.N.J. 1988), aff'd, 993 F.2d 878 (3d Cir. 1993).  The party filing the appeal has the burden of demonstrating that the magistrate's decision was clearly erroneous or contrary to law.  Exxon Corp. v. Halcon Shipping Co., Ltd., 156 F.R.D. 589, 591 (D.N.J. 1994).  Unless that burden is met, the magistrate judge's findings should not be rejected even if the district court could have decided the matter differently. Andrews v. Goodyear Tire & Rubber, Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000) (a district judge's "simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review"); Toth v. Alice Pearl, Inc.,158 F.R.D. 47, 50 (D.N.J. 1994). Moreover, there is particularly broad deference given to a magistrate judge's discovery rulings, especially when the magistrate judge has managed the case from the outset and developed a thorough knowledge of the proceedings.  Engers v. AT&T Corp., No. Civ. A. 98-3660, 2006 WL 1210507, at *1-2 (D.N.J. Apr. 7, 2006) (citing Lithuanian Commerce Corp., Ltd v. Sara Lee Hosiery, 177 F.R.D. 205, 214 (D.N.J. 1997)) (other citations omitted); Sisters of St. Dominic of

Caldwell, No. Civ. A. 03-3078, 2005 WL 1924320, at *1 (D.N.J. Aug. 10, 2005).

## III.  DISCUSSION

In the present appeal, Plaintiff objects to Judge Rosen's finding that MetLife's response to Plaintiff's Interrogatory No. 1 answers the question posed in that interrogatory.  Plaintiff insists that Interrogatory No. 1 seeks "a description of the types of financial arrangements that appear under the Title 'Types of Financial Arrangements Requested'" on CDM's group plan application.  In terms of the relevance or discoverability of the information sought, Plaintiff asserts:

> If CDM was paying an 'Excess Risk and Special Premium' to MetLife based on knowledge that CDM employees performed Hazardous Waste Operations fieldwork and MetLife utilized an erroneous low risk job description of fieldwork to deny Plaintiff's own occupation LTD benefits this is an example of conflict of interest and of Met Life's knowledge, given the information available, of Plaintiff's actual fieldwork requirement.

(Pl. Mem. at 2.)  Plaintiff claims such information is discoverable under Pinto.

In contrast, MetLife argues that its answer to Interrogatory No. 1 already comports with Pinto, and further, that any additional information Plaintiff seeks is irrelevant to the present matter.  In terms of relevance, MetLife asserts that CDM's application to MetLife for LTD group plan insurance demonstrates that CDM did not request any of the financial arrangements that Plaintiff now seeks to have defined; therefore, it appears that a response explaining those financial arrangements would be irrelevant to Plaintiff's case because such coverage was never requested by CDM nor provided by MetLife.  The Defendant also argues that the question of whether CDM employees worked with hazardous materials is irrelevant to the funding of the LTD Plan.  With respect to Pinto, MetLife contends that its previous response to Interrogatory No. 1 abides by the Third Circuit's directives, particularly in light of the limited scope of review

in an ERISA action of this kind.

### A. Standards for Discovery and Pinto

In general, the scope of permissible discovery in federal court is articulated in Federal Rule of Civil Procedure 26. Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . . .

Fed. R. Civ. P. 26(b)(1). Courts construe this rule liberally, allowing discovery for any matters which bear upon, or which reasonably could lead to other matters that bear upon the issues in the case. Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990) (citing Tele-Radio Sys. Ltd. v. DeForest Electronics, Inc., 92 F.R.D. 371, 375 (D.N.J. 1981)). This liberal approach permits parties "to scrutinize all relevant evidence so that each will have a fair opportunity to present its case at trial." Nestle Foods, 135 F.R.D. at 104 (citing Goldy v. Beal, 91 F.R.D. 451, 454 (M.D. Pa. 1981)).

In addition to the general discovery rules set forth in Rule 26(b)(1), the Third Circuit has specifically defined the inquiry used for reviewing a denial of a request for benefits under an ERISA plan. See Pinto v. Reliance Standard Ins. Co., 214 F.3d 377 (3d Cir. 2000). In Pinto, the Plaintiff's request for benefits under an ERISA plan was denied by the insurance company that both funded and administered that ERISA plan. Id. at 378. The Court found that under those circumstances, the insurance company operated with a conflict of interest. Id. When an insurance carrier both funds and administers claims under an ERISA plan, that insurer has "an active

incentive to deny close claims in order to keep costs down and keep themselves competitive so that companies will choose to use them as their insurers." Id. at 388.  In other words, the "relationship between the funds, benefits decisions, and the beneficiaries invites self-dealing." Id. at 383-84.  Because the insurance company pays beneficiaries from its own funds rather than the assets of a trust, its "fiduciary role is in perpetual conflict with its profit-making interest as a business." Pinto, 214 F.3d at 384 (citing Brown v. Blue Cross & Blue Shield of Alabama, 898 F.2d 1556, 1561 (11th Cir. 1990)).

As a result, in those situations where the insurer both funds and administers benefits, the court reviews a denial of benefits under a heightened "arbitrary and capricious" standard of review. See id. at 392.  The heightened standard is a sliding scale analysis which allows the court to consider a conflict of interest as a factor relevant to determining the validity of a denial of benefits, such that "the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." Id. at 391 (quoting Doe v. Group Hospitalization & Medical Services, 3 F.3d 80, 87 (4th Cir. 1993)).  In other words, "the arbitrary and capricious standard may be a range, not a point . . . [it is] more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is." Id. at 392-93 (citations omitted).

In applying the sliding scale approach adopted in Pinto, courts may take into account "the sophistication of the parties, the information accessible to the parties, and the exact financial arrangement between the insurer and the company." Id. at 392. The court may also consider the current status of the fiduciary. Pinto, 214 F.3d at 392.  That is, if there is no long-term or stable relationship with the employer, then the insurance company has little incentive to worry about any reputational harm that might occur if it denies employees' claims to protect its own

economic interests. See id.  Finally, when evaluating the denial of benefits, courts must "look not only at the result-whether it is supported by reason-but at the process by which the result was achieved." Id. at 393.

**B. Application of Rule 26(b)(1) and Pinto to Plaintiff's Appeal**

In light of the Rule 26(b)(1) standard and the parameters set forth in Pinto regarding the scope of review in ERISA cases like the present matter, the Court must determine whether it was clearly erroneous for Judge Rosen to deny Plaintiff's motion to compel a more comprehensive answer to Interrogatory No. 1.  For the reasons that follow, the Court will affirm Judge Rosen's decision and deny Plaintiff's appeal.

First, in light of the facts of this case, the additional information Plaintiff seeks in response to Interrogatory 1 does not appear to be reasonably calculated to lead to the discovery of admissible evidence.  Although Plaintiff requests a description of the "Excess Risk, Excess Risk and Special Premium, and Retrospective Premium Determination" options on CDM's application for long term group disability insurance, it appears that CDM did not actually select any of those options from MetLife.  The copy of CDM's application that Plaintiff attached to her appeal is a poor quality copy of the application which shows some black specks in and around the boxes next to these excess risk/special premium options. (See CDM Application, attached to Pl. Mem. at Exhibit A.)  However, there is no "X" in any of those boxes, and the other boxes which do have an X in them look quite different than the apparently empty boxes next to "Excess Risk, Excess Risk and Special Premium, and Retrospective Premium Determination."  Not only that, but Plaintiff previously submitted to the Court a clearer copy of CDM's application, which shows that CDM did not select any of the boxes next to the options Plaintiff presently seeks to have defined. (See CDM Application, attached to Pl. 11/3/05  Motion to Compel, at Exhibit E.)  In

fact, the Defendant's opposition to Plaintiff's appeal affirmatively states that MetLife did not provide any of the coverage which Plaintiff inquires about in Interrogatory No. 1. See Def. Opp. at 1 (affirming that Plaintiff's "current application seeks information that is wholly irrelevant because the coverage she is inquiring about was not even provided"). In other words, the additional information Plaintiff seeks in response to Interrogatory No. 1 is unlikely to lead to the discovery of admissible evidence because CDM did not obtain the additional coverage that Interrogatory No. 1 seeks to have defined or described.

Second, it was not clearly erroneous for Judge Rosen to deny Plaintiff's motion to compel on the grounds that CDM's answer to Interrogatory No. 1 comports with the standard enumerated in Pinto. (See Order dated 9/7/05, at D.E. # 49.) Under Pinto, each case is to be considered on its facts. Pinto, 214 F.3d at 392. As mentioned above, when applying the sliding scale analysis from Pinto, courts are to consider the sophistication of the parties, the information accessible to the parties, the financial arrangements between the insurance company and the employer, and the process by which the benefits determination was made. Id. at 392-93. In the present case, MetLife apparently did not provide CDM with any of the financial options Plaintiff seeks to define in Interrogatory No. 1. Because those financial arrangements apparently never existed between CDM and MetLife, any inquiry into those kinds of options would not provide insight into the information accessible to the parties, the financial arrangements between CDM and MetLife, nor the process by which MetLife made a determination as to the Plaintiff's claim for benefits.[1] Accordingly, it was not clearly erroneous or contrary to law for Judge Rosen to deny

---

[1] The Court notes that if MetLife had provided the excess risk/special premium coverage referred to in Interrogatory No. 1, this Court might have faced a closer call. The closer question in those circumstances would be whether any such excess risk/special premium arrangement signaled to MetLife that Plaintiff worked with hazardous materials, and thus, deserved a higher risk job description during the determination of her claim for benefits. In other words, the

Plaintiff's motion to compel a better answer to Interrogatory No. 1.

## IV. CONCLUSION

For the foregoing reasons, this Court will deny Plaintiff's Appeal of Judge Rosen's denial in part of Plaintiff's Motion to Compel, dated September 7, 2005.  The accompanying Order shall issue today.


Dated:   6/6/06                                             s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge

---

question would be whether the Interrogatory becomes permissible under Pinto because it involves the "financial arrangements" between MetLife and CDM and/or potentially relates to the "information accessible to the parties" at the time the benefits determination was made. See Pinto, 214 F.3d at 392.  However, this issue of whether Interrogatory No. 1 implicates the financial arrangements between MetLife and CDM, or the information known to MetLife at the time it denied Plaintiff's claim, is not present on the current facts because CDM did not obtain the coverage referred to in Interrogatory No. 1.