NOT FOR PUBLICATION                    [Docket Nos. 86, 88, 91, 104]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

```
_____
                               :
LISA EVANS,                    :
                               :
              Plaintiff,       :    Civil Action No. 03-4915 (RMB)
                               :
         v.                    :    OPINION
                               :
EMPLOYEE BENEFIT PLAN,         :
CAMP DRESSER & MCKEE, INC.,    :
et al.,                        :
                               :
              Defendants.      :
_____
```

APPEARANCES:

    Lisa Evans
    2204 Wimbledon Way
    Blackwood, NJ 08012
        Plaintiff Pro Se

    Patrick G. Brady
    McElroy Deutsch Mulvaney & Carpenter, LLC
    100 Mulberry Street
    Newark , NJ 07102
        Attorney for Defendant, Camp Dresser & McKee, Inc.

    Randi F. Knepper
    McElroy Deutsch Mulvaney & Carpenter, LLC
    1300 Mt. Kemble Avenue
    P.O. Box 2075
    Morristown, NJ 07962
        Attorney for Defendant, Metropolitan Life Insurance Co.


**BUMB,** United States District Judge:

**Introduction:**

    Pursuant to her Amended Complaint in this matter, Plaintiff

brought the following claims against Defendants, Camp Dresser and McKee ("CDM"), and the Metropolitan Life Insurance Company ("MetLife"):

- Count I - for benefits against MetLife and CDM.
- Count II - for breach of fiduciary duty against MetLife and CDM.
- Counts III & IV - for failure to provide the STD and LTD summary plan descriptions (SPDs) in violation of 29 U.S.C. § 1132(c) against CDM.
- Count V - for failure to provide adequate SPDs against CDM.

On May 22, 2007, this Court held a hearing in the above-captioned matter regarding the following motions: 1) Defendant CDM's motion for summary judgement as to Counts II-V of Plaintiff's Amended Complaint; 2) Defendant MetLife's motion for summary judgment as to all Counts asserted against it; and, 3) Plaintiff Lisa Evans's motion for summary judgment as to both Defendants.

In an Oral Opinion delivered that date, this Court granted Camp Dresser's motion and granted MetLife's motion as to Count II. Plaintiff's motions were denied on these Counts. The Court, however, reserved decision on Count I of Plaintiff's Complaint with regard to MetLife. Further, on May 25, 2007, this Court granted CDM's motion for leave to file a motion for summary judgment out of time as to Count I of Plaintiff's Complaint. That motion is currently pending before this Court along with Count I as asserted against MetLife. Plaintiff's motion as to Count I is also pending.

**Factual Background:**[1]

Plaintiff Lisa Evans worked as an Environmental Engineer with CDM, beginning April 14, 1997.  Pursuant to her employment, Plaintiff participated in the CDM Short Term Disability Plan ("STD" Plan) and Long Term Disability Plan ("LTD" Plan).  In order to receive LTD benefits, a claimant must provide proof of disability.[2]

Plaintiff's last day reporting to work was January 7, 2000.  At that time, Plaintiff completed a Disability Claim Employee Statement in which she claimed she was seeking short-term disability benefits for "difficulty breathing, chest congestion [and] shortness of breath."  Following her application for STD benefits, MetLife asked CDM to fill out a "Disability Claim

---

[1] The facts are familiar to the parties and were recounted at length by the Court on May 22, 2007.  They will be re-stated briefly here.

[2] The terms of the SPD state, in relevant part:

"Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
   1) during your Elimination Period [90 days of continuous disability] and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy...

"Own Occupation" means the activity that you regularly perform and that serves as your source of income.  It is not limited to the specific position you held with your Employer.

Admin. Record at 0036.

3

Employer Statement," which asked the employer to describe
Plaintiff's job duties.  When asked whether "In the course of
performing the job, the employee is required to be exposed to
dust, gas or fumes," James D. Miller, a CDM Resource Manager,
checked "No".  MetLife received this job description from CDM on
February 15, 2000.

On April 10, 2000, MetLife approved Plaintiff's claim for
STD benefits through April 16, 2000.  After the expiration of her
STD benefits, Plaintiff filed a claim for LTD benefits.  Evans
completed a personal profile evaluation stating that she had
asthma and that she had sought treatment for the condition from
Robin Gross, M.D., (Pulmonologist), Nancy Beggs, M.D.,
(Internist), and Marla Tiffany, M.D., (Allergist).

In a March 29, 2000, letter to Dr. Beggs, Dr. Gross stated,
in relevant part: "Given the inconsistent history with regard to
her symptoms and exposure, I am not convinced that this is
occupational asthma."  Furthermore, in an April 12, 2000 letter,
Dr. Gross recommended that Plaintiff "return to work on April 17,
2000" and stated, "I attempted to review my recommendations with
Ms. Evans regarding the fact that her asthma does not appear to
be occupational in nature" and that "[g]iven the fact that she
appears to be well controlled on medication, I thought that it
would be safe for her to go back to work."

On May 11, 2000, Dr. Tiffany's office faxed an unsigned

4

physician statement to MetLife answering "yes and no" to the question of whether Evans' condition was work-related.  The form stated that Evans should cease fieldwork "until medical evaluation" and that Evans could have a possible asthmatic attack if exposed to toxic vapors.  Under the section for objective findings, Dr. Tiffany wrote, "none at the time I saw the patient."  Dr. Tiffany also suggested that Evans receive a pulmonary opinion.

On May 24, 2000, MetLife informed Plaintiff that her LTD claim was being denied because there was "no objective medical information to indicate that [her] asthma is disabling" and because Dr. Gross, Plaintiff's pulmonologist, had released Plaintiff to return to work.  Plaintiff appealed this decision by letter dated July 24, 2000.

In her letter of appeal, Plaintiff stated that MetLife improperly denied the claim because Dr. Gross was not clearing Evans to return to fieldwork and complained that MetLife ignored Dr. Tiffany's determination of an inability to perform fieldwork. On July 26, 2000, Evans sent supplemental data from Eric Glasofer M.D., regarding an allergy skin tests.  Additionally, Evans provided a report from Dr. Glasofer dated August 9, 2000, diagnosing Evans with asthma and stating that Evans was to "avoid asthma triggers."

On October 18, 2000, MetLife advised Plaintiff that it had

evaluated her appeal and its decision would not be reversed.  In sum, MetLife stated that "[b]ased on all the available medical documentation, your benefits were denied, as Dr. Gross had released you to return to work and other medical information did not indicate you asthma was disabling."

Following this denial, Plaintiff wrote to MetLife on November 3, 2000, asking that it approve her LTD claim or advise her what additional evidence was required for her to prove disability.  Also, by letter on November 3, Plaintiff complained, <u>inter</u> <u>alia</u>, about CDM's response on the Employer Statement that Plaintiff was not exposed to "gas, dust or fumes" and asked that CDM provide MetLife with a "complete job description including fieldwork."  In response to Plaintiff's requests, James Miller of CDM examined Plaintiff's fieldwork assignments and amended the Employer statement on November 17, 2000, to indicate that Plaintiff could "sometimes be exposed to dust, gas or fumes."


**Discussion**:

*a) Count I - MetLife:*

In considering MetLife's decision to deny Evans' claim for LTD benefits, this Court must first determine the appropriate standard of review.  It is undisputed that, pursuant to the terms of the Plan, MetLife was granted discretionary authority to "interpret the terms of the Plan and to determine eligibility for

6

and entitlement to Plan benefits in accordance with the terms of the Plan...." (MetLife Ex. A at 0053); (Pl's Br. for SJ at 4). When such discretion is granted, a court reviews the administrative determination under an arbitrary and capricious standard. <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). Under the arbitrary and capricious standard, a court may overturn a decision of a plan administrator "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>McLeod v. Hartford Life and Acc. Ins. Co.</u> 372 F.3d 618, 623 (3d Cir. 2004). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." <u>Abnathya v. Hoffman-LaRoche, Inc.</u>, 2 F.3d 40, 44-45 (3d Cir. 1993) (internal quotations and citation omitted).

In her motion papers, Plaintiff conflates her arguments against CDM with her arguments against MetLife when she says that the arbitrary and capricious standard of review should not apply because "CDM failed to exercise its discretion." Whether or not CDM should have or did exercise its discretion is of no moment here as it is undisputed that MetLife did exercise its discretion in denying Plaintiff's LTD claim. Therefore, the arbitrary and capricious standard applies. <u>Pinto v. Reliance Standard Life Ins. Co.</u>, 214 F.3d 377, 378 (3d Cir. 2000).

What remains to be determined is how probing this standard

7

should be given the instant circumstances.  Where, as here, an insurance company both funds and administers the Plan, "it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." Id. at 378. Courts in this circuit apply a sliding scale method to determine the level of review in cases involving potentially conflicted ERISA fiduciaries, "intensifying the degree of scrutiny to match the degree of conflict." Id. at 379.

In determining the level of conflict, this Court must examine the specific facts of this case and take into account, "the sophistication of the parties, the information accessible to the parties, and the exact financial arrangement between the insurer and the company." Id. 214 F.3d at 394.  Moreover, a heightened standard of review is warranted where there is "demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits." Kosiba v. Merck & Co., 384 F.3d 58, 66 (3d Cir. 2004).

MetLife has conceded that the "sliding scale" standard of review applies because it both funded the ERISA plan at issue and determined entitlement to benefits. (MetLife SJ Br. at 20). MetLife argues, however, that this Court should not stray far from the usual deferential standard of review because the process by which it reached its claim determination was devoid of any apparent conflict, especially in light of the fact that MetLife

8

paid benefits for the period during which Plaintiff remained undiagnosed.  (MetLife's SJ Br. at 22).

In her brief in support of her motion for summary judgment, Plaintiff provides eight single spaced pages of what she contends is evidence of "structural conflicts and procedural irregularities" warranting a heightened arbitrary an capricious standard and a high degree of skepticism.  Many of these items, however, are irrelevant to the Court's analysis of MetLife's decision because they focus solely on CDM.  Moreover, several items Plaintiff seeks to submit are beyond the scope of the administrative record.

Plaintiff argues that the evidence to be considered by this Court should not be limited to the administrative record but should include the following:

- The application for Group Insurance and Group Policy;
- Various forms of "medical information";
- Vocational information showing that MetLife knew Plaintiff was exposed to gas, dust and/or fumes;
- Evidence of CDM's company programs;
- Evidence of Plaintiff's education and experience;
- Evidence of her appeal to CDM and CDM's response;
- Plaintiff's complaint to the Department of Banking and Insurance; and,
- Evidence of Plaintiff's temporary disability benefits, medical leave and unemployment.

Both parties agree that the only documents beyond the administrative record that can be considered by the Court are documents used to show a conflict of interest or to explain medical records.  Kosiba v. Merck & Co., 384 F.3d 58, 67 (3d Cir.

9

2004); <u>Goldstein v. Johnson & Johnson</u>, 251 F.3d 433 (3d Cir. 2001).  MetLife asserts, however, that several documents purported to be for those purposes are actually irrelevant and improperly submitted.  This Court agrees.  With the exception of evidence related to the revised job description regarding Evans's exposure to gas, dust and fumes, which goes to the issue of procedural irregularities, the remaining evidence cited by Plaintiff is impermissibly outside the administrative record as it does not show evidence of conflict or bias or explain medical terms.  <u>See</u> <u>Mitchell v. Eastman Kodak Co.</u>, 113 F. 3d 433, 440 (3d Cir. 1997) (holding that the reviewing court must look at the evidence that was before the administrator).

As stated above, the heightened standard of review applies because MetLife both funds and administers the plan.  In keeping with case law discussed above, this Court will consider, <u>inter alia</u>, the sophistication of the parties, the information accessible to the parties, <u>Pinto</u>, 214 F.3d at 394, and examine "demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits." <u>Kosiba v. Merck & Co.</u>, 384 F.3d 58, 66 (3d Cir. 2004).

In addition to a baseline conflict, which exists because MetLife both funds the plan and administers benefits, and the relative sophistication of MetLife in ERISA litigation as compared to <u>pro se</u> Plaintiff Evans, Plaintiff argues that a procedural irregularity exists because of CDM's "erroneous"

10

description of her job duties.  However, for the reasons
discussed further below, this purported irregularity did not
result in bias or unfairness.  As such, the decision of the
fiduciary, MetLife, will be subjected to a somewhat heightened
standard of review that remains deferential.

   At oral argument, this Court raised its concern as to
whether CDM's job description was a potential irregularity that
impacted the extent to which Plaintiff's claim was given a full
and fair review.  While Plaintiff did not directly name 29 U.S.C.
§ 1133 in her Amended Complaint, in her motion for summary
judgment and in opposition to MetLife's motion, she opines that
she was denied a full and fair review of her claim as required by
the statute and elaborated upon by 29 C.F.R. § 2560.503.  Because
Plaintiff is proceeding pro se, and this Court is required to
construe her pleadings liberally, this Court finds that Plaintiff
has raised a claim under this section.[3]  Higgins v. Beyer, 293
F.3d 683, 688 (3d Cir. 2002)(discussing liberal construction of
pro se pleadings).

   Pursuant to 29 U.S.C. 1133, a participant is entitled to a
reasonable opportunity for full and fair review of her claim.
Accordingly, a benefit plan shall:

_____

   [3] In opposition to Plaintiff's motion, MetLife points out
that the version of the regulation now in effect is different
from that at the time Plaintiff filed her claim.  This Court has
assessed and relies on the appropriate version in effect at the
time in question.

> provide adequate notice in writing to any participant
> or beneficiary whose claim for benefits under the plan
> has been denied, setting forth the specific reasons for
> such denial, written in a manner calculated to be
> understood by the participant.

29 U.S.C. § 1133(1).  Additionally, "[p]ursuant to this section,

the Secretary of Labor has established that written notice of

denial of a claim must:

> provide to every claimant who has been denied a claim
> for benefits written notice setting forth in a manner
> calculated to be understood by the claimant:
>
> (1) The specific reason or reasons for the denial;
>
> (2) Specific reference to pertinent plan provisions on
> which the denial is based;
>
> (3) A description of any additional material or
> information necessary for the claimant to perfect the
> claim and an explanation of why such material or
> information is necessary; and
>
> (4) Appropriate information as to the steps to be taken
> if the participant or beneficiary wishes to submit his
> or her claim for review."

Syed v. Hercules Inc., 214 F.3d 155, 162 (3d Cir. 2000) (quoting

29 C.F.R. § 2560.503-1(f) (2000)).

In its initial letter denying LTD benefits, MetLife

recounted the SPD's definition of "Disability" and informed

Plaintiff that:

> Dr. Gross determined that you had asthma that was
> triggered by toxins that you encountered while doing
> fieldwork.  This was based on your statements that your
> asthma attacks occurred after being in the field.  In
> subsequent visits to Dr. Gross, you stated that these
> attacks had actually begun prior to that time. In light

of this information, and with your asthma now under control, **she released you to return to work.  There is no other objective medical information to indicate your asthma is disabling**.

Admin. Record 0071-0072 (emphasis added).

In addition, Plaintiff was told she could submit "additional medical or vocational information...." Id.  Plaintiff then submitted supplemental data from Eric Glasofer M.D., regarding an allergy skin test, a letter discussing an article in the American Review of Respiratory Disease, a copy of her Hazardous Waster Operations and Emergency Response Training Certificate, a copy of OSHA regulations regarding hazardous waster operations, and a copy of a list of "Low Molecular Weight Chemicals Causing Occupational Asthma."  She later submitted another report from Dr. Glasofer, dated August 9, 2000, diagnosing Evans with asthma and stating that Evans was to "avoid asthma triggers."  Finally, she submitted a copy of 29 C.F.R. 19102.120 – the "Hazardous Waste Operations and Emergency Response" and stated that said information clarified the exposures relevant to performing fieldwork.

Following the appeal, Plaintiff was again informed of a denial of benefits.  This time, MetLife referred to the following in its letter:

- "a job description noting that you were not exposed to dust, fumes or gas..."

- "Based on all of the available medical documentation, your benefits were denied, as Dr. Gross had released you to return to work, and other medical information

13

did not indicate your asthma was disabling."

- "Although there is mention that one of the asthma triggers you have is to fumes, it does not delineate which fumes trigger your asthma, and whether or not they have been identified in your work setting because no formal testing has been performed."

- "You stated that you sought treatment with Dr. Tiffany after Dr. Gross released you to return to work. However, Dr. Tiffany referred you back to Dr. Beggs and the pulmonologist, based on the fact that she could find no objective etiology for your shortness of breath."

Admin. Record 0074-75.  The final denial of Plaintiff's benefits claim was based on these grounds.

In applying the heightened arbitrary and capricious standard of review, the Court must not only look at the result and whether it is supported by reason, "but at the process by which the result was achieved." Pinto, 214 F.3d at 393.  At oral argument, the Court asked the parties for further briefing regarding the relevance of the "incorrect" job description as to whether MetLife's decision was arbitrary and capricious.  Specifically, the Court inquired about the potential applicability of the reasoning employed in Viglietta v. Metropolitan Life Ins. Co., 2005 U.S. Dist. LEXIS 42924 (S.D.N.Y. Aug. 3, 2005).

In Viglietta, the plaintiff, who had been denied LTD benefits, claimed that MetLife incorrectly assumed that his job description was sedentary and did not require travel or driving. The court held, in light of the fact that "it was not at all clear from the denial letter that MetLife considered the correct

14

job description," that the plan administrator failed to meet the requirements of a full and fair review under 29 U.S.C. § 1133. Id. at 33.  More specifically, the court stated, "even if an administrator provides substantial medical evidence to support its decision, if that decision and the evidence used to support it are based in incorrect premises, such as an inaccurate job description, the decision is necessarily arbitrary and capricious." Id. at *28.  In other words, if the medical conclusion upon which the denial of benefits is based is founded on inaccurate job information, said denial may be arbitrary and capricious.

In its supplemental submissions, MetLife argues that it is "irrelevant whether MetLife knew that Evans was sometimes exposed to dust, gas and fumes because her own treating physician, Dr. Gross, released Evans to return to work in her own occupation and there is no medical support for any functional limitations." MetLife Supp. Br. at 2.  MetLife points to several things in support of its assertion, especially Evans' repeated admissions on the record that Dr. Gross was aware of her accurate job duties.

Indeed, the following conversation occurred on the record between the Court and the Plaintiff:

> **Court:** But Dr. Gross knew that you were doing field work, you told Dr Gross what you did, right?
>
> **Evans:** Yes.

15

> **Court:** Yes, You told her where you worked, you told her you were exposed to toxins, gas, fumes, dust, you told her all that?
>
> **Evans:** Right. And that's why I was upset - the release to work because I knew the field work had gas, dust and fumes in it that I as told to avoid. I couldn't go back to my job.

5/22/07 Hearing Transcript at 98.  Therefore, by Plaintiff's own admission, Dr. Gross was fully aware of the existence and extent of Plaintiff's exposure to "gas, dust, and fumes" before releasing Plaintiff to return to work.

MetLife also argues that Plaintiff's assertion that Dr. Gross was not clearing her to return to her job at CDM is undermined by Evans' own understanding, as reflected in her appeal letter dated July 24, 2000.  The letter states, in relevant part: "Dr. Gross determines that it is safe, meaning not in the reach of danger for me **to return to the field** under control with medication."  Admin. Record at 0429 (emphasis added).

Finally, while Evans seeks to rely on the medical documentation from Drs. Tiffany and Glasofer, MetLife argues that there were no objective medical findings made by either regarding Plaintiff's condition.  For example, when queried as to an "objective finding", Dr. Tiffany responded "not at the time I saw the patient."  Admin. Record at 0420.  Further, Dr. Tiffany referred Plaintiff to a pulmonologist and Dr. Gross, a pulmonologist, had already cleared her to return to work.  Also,

16

on Dr. Glasofer's list of "asthma triggers", occupational exposure was expressly crossed out and initialed by Glasofer.

MetLife also avers that the presence of the incorrect job description with MetLife is irrelevant because, regardless of said description and its citation thereto, Metlife's decision was based on the medical determinations made by Dr. Gross.  In Gambino v. Liberty Life Assurance Co., 2007 U.S. App. LEXIS 9023 (3d Cir. 2007), the Third Circuit upheld the decision to deny benefits despite the fact that there was no inquiry into plaintiff's work related duties.  Because there was insufficient medical evidence regarding plaintiff's condition, the defendant "could not go on to the next step of determining whether that condition rendered him unable to perform his duties, whatever those duties might have been." Id. at 16 n.2.  Utilizing this logic, MetLife argues that the accuracy of the job description is irrelevant because Gross knew of Plaintiff's duties and determined that she could return to work.

Plaintiff's rejoinder is twofold: first she counters MetLife's assertions by arguing that the erroneous job description renders the decision arbitrary and capricious; and, second, that Dr. Gross' release of Evans to return to work was not a release to work at CDM.  More specifically, Evans argues that the presence of the inaccurate job description in the final appeal denial letter but not in the initial denial demonstrates that MetLife violated ERISA regulations.  The inaccurate job

17

description, Evans argues, precluded a full and fair review because "MetLife's appeal denial letter does not make it clear that MetLife considered Plaintiff's actual job description. . . ." (Pl.'s Supp. Br. at 8).

Plaintiff has failed to meet her burden of demonstrating that MetLife's decision was improper. See Pinto, 214 F.3d at 392. While the job description on file may not have been entirely accurate and it was mentioned in the final denial letter and not in the initial letter, this Court holds that a full and fair review was not precluded in this case and MetLife's decision was not arbitrary and capricious. The submissions of the parties, in conjunction with oral argument, have made clear that MetLife based its decision on the objective medical recommendations of Dr. Gross, Plaintiff's treating pulmonologist, that Plaintiff could return to work and that, prior to making said recommendation, Dr. Gross was well aware of Plaintiff's accurate job description. As repeatedly admitted by Plaintiff, Dr. Gross knew about her exposures on the job and still released her to return to work. See 5/22/07 Hearing Transcript at pp. 97-98. It is clear that MetLife relied on Dr. Gross' well-informed opinion and a lack of medical evidence demonstrating disability in denying Plaintiff's claim. This well-grounded decision relieves the Court of any concerns raised by Viglietta.

In Viglietta, the nurse consultant who reviewed the plaintiff's claim was not aware of plaintiff's actual job

18

description and the initial denial of benefits in that case was substantially based on the ill-informed report submitted by the nurse consultant.  In contrast, Dr. Gross' opinion, upon which MetLife's denial is based, is based on an accurate job description.

Moreover, while Plaintiff has inexplicably decided that the clear statement "return to work" somehow does not include her position at CDM, this Court holds that no reasonable jury could find that Plaintiff was not cleared to return to her own occupation.  Ms. Evans' fanciful arguments are largely semantic. Her admission that Dr. Gross cleared her to return to work, and that "Dr. Gross determine[d] that it is safe. . .for me to return to the field," in contrast with her assertion that she was not cleared to her own occupation, is untenable.  See Admin. Record at 0429.  Plaintiff's position makes no sense:  she admits that Dr. Gross cleared her to return to work, but argues that Gross was providing her asthma education on triggers to avoid and, therefore, could not have been releasing her to her own occupation.[4]  This line of reasoning renders the release to return to work a nullity and makes no sense whatsoever in light

---

[4] Evans also takes issue with MetLife's letter stating that "as you were informed in our denial letter dated 5/24/00, evidence to support your claim for total disability has not been produced."  Apparently, Plaintiff believes MetLife has erred because this is an "own occupation" disability claim not a total disability claim.  As correctly pointed out by MetLife, however, both the May 24, 2000, and October 18, 2000, letters reveal that MetLife set forth the proper disability definition from the SPD.

of the context of Dr. Gross' April 12, 2000, letter which states, inter alia, "once [Evans] is back at work and the symptoms remain controlled"; "I have recommended that she return to work and continue her current medications"; and "Ms. Evans became very angry [when told that] it would be safe for her to go back to work" and "[d]espite the fact that I had recommended that she return to work on Monday, she has already 'pulled herself out of work.'" See Admin. Record. at 0459-0460.   Clearly, Dr. Gross anticipated that when she told Evans she could return to work the very next Monday, that she would be returning to a job she already held at CDM.   See id. ("I had recommended that she return to work on Monday, she has already 'pulled herself out of work.'").

     Overall the evidence demonstrates that it was clear in both the initial denial letter and the letter denying Evans' appeal that MetLife based its decision on the release to work and a lack of objective medical evidence of disability.   While Plaintiff submitted information from Drs. Tiffany and Glasofer, Dr. Tiffany had no objective medical findings and recommended that Plaintiff get a pulmonary opinion.   Notably, Plaintiff already had a pulmonary opinion from Dr. Gross releasing her to return to work. Also, while Dr. Glasofer recommended that Plaintiff avoid asthma triggers, he made no recommendation that Plaintiff should not return to work or that she was disabled.   As such, this Court cannot find that MetLife's decision is "without reason,

20

unsupported by substantial evidence or erroneous as a matter of
law." McLeod v. Harford Life and Acc. Ins. Co., 372 F. 3d 618,
623 (3d Cir. 2004).

For the aforementioned reasons, MetLife's decision was not
arbitrary and capricious.  Summary judgment will be granted as to
Count I in favor of MetLife.  Moreover, because this Court, even
construing all reasonable inferences in favor of Evans in
analyzing MetLife's motion for summary judgment, found that no
material issues of fact exist as to whether MetLife's decision
was arbitrary and capricious, this Court must deny Plaintiff's
motion for summary judgment against MetLife.  Construing all
reasonable inference in favor of MetLife, this Court finds that
Plaintiff is not entitled to summary judgment on her motion.

### b) Count I - CDM

Both Plaintiff and Defendant, CDM, have moved for summary
judgment on the issue of whether CDM is liable to Plaintiff
pursuant to 502(a)(1)(B).  Plaintiff avers that CDM is liable for
failing to provide benefits because CDM is listed in the SPD as a
Plan Administrator and, in the LTD SPD section entitled
"Statement of ERISA Rights," it says "you have a right to have
the Plan Administrator review and reconsider your claim."  Pl.'s
SJ Br. at 3; Admin. Record at 0054.[5]  Evans asserts that the SPD

---

[5] For ease, the Court will refer to the Administrative
Record as submitted by MetLife.

says that she has the right to have the Plan Administrator review
and reconsider her claim and, since CDM is identified as a Plan
Administrator therein, CDM had to consider her claim for long
term disability benefits.  She believes this is a fair reading of
the plain language of the Plan and that "nowhere within the LTD
SPD does it state that CDM delegated its discretionary authority
to MetLife."  Pl.'s Resp. to CDM's additional statement of facts.
Plaintiff also avers that the following section of the SPD
confirms that CDM has discretionary authority to administer her
benefit claims:

### Discretionary Authority of Plan Administrator
### and Other Plan Fiduciaries

> In carrying out their respective responsibilities under
> the Plan, the Plan administrator and other Plan
> fiduciaries shall have discretionary authority to
> interpret the terms of the Plan and to determine
> eligibility for and entitlement to Plan benefits in
> accordance with the terms of the Plan.

Admin. Record 0053; (Pl.'s Supp. Br. at 3).  Based on this
language, Evans asserts that CDM had discretionary authority that
it failed to exercise.

CDM argues that it is not a proper party to a claim for
benefits under 29 U.S.C. §1132(a)(1)(B) and has no authority to
administer Plan benefits. (CDM's Supp. Br. 1).  CDM asserts that
the express language of the Plan documents made clear that such
authority was vested in MetLife.  Further, Plaintiff's reliance
on the above-quoted section of the SPD regarding "Discretionary
Authority of Plan Administrator and Other Plan Fiduciaries" is

22

misplaced because Plaintiff fails to recognize the import of the phrase "[i]n carrying out their respective responsibilities under the plan. . . ." The discretion is in carrying out their "respective responsibilities," and CDM is not responsible for benefit eligibility determinations while MetLife, another Plan fiduciary, is responsible.

Other relevant SPD language states that "**MetLife in its discretion** has authority to interpret the terms, conditions, and provisions of the entire contract." Admin Record at 0029 (emphasis added). Moreover, the SPD makes clear that:

> In the event our claim has been denied in while or in part, you. . . can request a review of your claim **by Metropolitan**. This request should be sent to Group Insurance Claims Review at the address of Metropolitan's office which proceeds the claim withing 60 days. . . .

Id. at 0053 (emphasis added). The SPD also states **that "Metropolitan will re-evaluate** all the information and you or, if applicable, your beneficiary will be informed of the decision in a timely manner." Id. (emphasis added).[6]

While Evans asserts that CDM was responsible for evaluating her claim, CDM avers that this is a post-hoc assertion belied by

---

[6] MetLife also avers that it is "a fiduciary of the Plan with respect to long-term disability claim administration and **was conferred discretionary authority to interpret the terms of the Plan and determine eligibility for benefits under the Plan**." Affidavit of Margaret Calderon at ¶ 2 submitted in support of MetLife's motion for summary judgment.

Evans' own understanding at the time of the denial of benefits.
At the time of the denial, Evans submitted a written request to
MetLife to review denial of her claim.  Admin Record. 0425.  When
she did write to CDM, Plaintiff did not request that CDM review
the denial of her claim, but merely said that she was "appealing
to the Plan Administrator **to ensure that Metlife operates the LTD
plan prudently.** . . ." and said, "**[p]lease see that MetLife
reviews my claim** in accordance with the LTD policy."  Pl.'s Ex.
50.  Plaintiff wrote to CDM again on December 11, 2000, and asked
that CDM provide MetLife with "a complete and accurate job
description" and "**see that MetLife reviews my claim** in accordance
with the LTD policy." Pl.'s Ex. 52 (emphasis added).  Thus, CDM
asserts, until litigation, Plaintiff clearly understood the
language of the SPD to mean that MetLife was the party
responsible for the review and administration of benefit claims
and that her current arguments are undermined by her letters to
CDM.

Pursuant to applicable law, claims for benefits can be
brought against the plan itself or persons who control the
administration of the of the plan as fiduciaries.  <u>Curcio v. John
Handcock Life Ins. Co.</u>, 33 F.3d 226, 233 (3d Cir. 1994).  As
there is no dispute that CDM is not the plan itself, the issue
turns on whether CDM had "authority or responsibility for
administering benefits under the LTD plan."  <u>Edwards v.</u>

Continental Airlines and CIGNA Group Ins., 1999 U.S. Dist. LEXIS 67 at * (E.D. Pa. 1999).  In Edwards, the Court held that Continental, the employer, was not a proper defendant for a claim brought pursuant to 502(a)(1)(B) because "plaintiff's assertions fail to establish that Continental acted as a plan administrator with regard to LTD benefits or had any other fiduciary duties that could be implicated by Plaintiff's claim. . . ." Id. at * 6 n.4.

Plaintiff has presented no evidence from which a reasonable jury could conclude that CDM maintained authority over the administration of LTD benefits.  "[T]he linchpin of fiduciary status under ERISA is discretion," Curcio, 33 F.3d at 233, and the plain language of the SPD makes that clear that **MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract."**  Admin. Record at 0029 (emphasis added).  Moreover, Plaintiff's letters, sent contemporaneous to her appeal, reveal that she understood this: "please **see that MetLife reviews my claim** in accordance with the LTD policy." Pl.'s Ex. 52 (emphasis added).  Other language also makes clear that Metlife was solely responsible for making determinations regarding administration of benefits: "You will be paid a Monthly Benefit, in accord with Plan Highlights, if we determine that: you are disabled; and you became disabled while covered under the Plan." Admin. Record at 0035.  Importantly,

the SPD expressly states that "[r]eference to 'we', 'us' or 'our' means MetLife."  <u>Id.</u> at 0029.  Thus, the Plan reads, "if [MetLife] determines that: you are disabled" you will receive benefits.

Additionally, the listing of CDM as a Plan Administrator does not suffice to trump the delegation of authority to MetLife. While the "Statement of ERISA Rights" section states that participants have the right to have the "Plan administrator review and reconsider your claim," that statement is part of a section required by federal law that attempts to summarize certain rights and protections available under ERISA, not to summarize the operative terms of the Plan at issue.[7]

The Seventh Circuit employed this logic in <u>Cruthis v. Metropolitan Life Ins. Co.</u>, 356 F.3d 816 (7th Cir. 2004).  In <u>Cruthis</u>, MetLife refused to pay plaintiff's disability benefits. Plaintiff filed suit in Illinois state court and MetLife removed to federal court.  Plaintiff moved to remand and the district court granted the motion based upon what it considered to be a forum selection clause in the Plan SPD: the "Statement of ERISA Rights" section stated that "if you have a claim for benefits

---

[7] On Page 4 of her supplemental brief, Plaintiff represents that pages 0052-0054 of Calderon Ex. A, it states "you have the right to have CDM, the plan administrator, review and reconsider your claim."  This is an inaccurate quote, this section, part of the "Statement of ERISA Rights", says "[y]ou have the right to have the Plan administrator review and reconsider your claim." CDM is <u>not</u> mentioned.

which is denied or ignored, in whole or in part, you may file it
in a state or federal court."[8]

On appeal, plaintiff argued that MetLife had waived its
right to remove to federal court "by stating within the summary
plan description that [plaintiff] had the right to file suit in
state or federal court."  The Seventh Circuit disagreed and held
that the phrase, "you may file suit in a state or federal court"
is a "statutorily mandated disclosure of ERISA rights rather than
a forum selection clause." Id. at 818.  The statement was not a
freely negotiated part of the contract but rather an addition for
compliance with federal law.  Moreover, the court stated,

> there is no evidence that the statement was intended to
> be part of the contract between the parties. The clause
> began with the capitalized title "STATEMENT OF ERISA
> RIGHTS" and the first sentence states that "the
> following statement is required by federal law and
> regulation." The statement further specified that
> "under ERISA, there are steps you can take to enforce
> the above rights." **Thus, the plain language of the
> statement indicates that it is a disclosure of
> applicable law rather than a substantive contract
> provision.**

Id. (emphasis added).

Similar logic applies here.  There is no evidence that the
Statement of ERISA Rights in the SPD at issue was anything more
than a "disclosure of applicable law rather than a substantive
contract provision."  In fact, the language, "the following
statement is required by federal law and regulation," appears at

_____

[8] Notably, the exact same language appears in the SPD at
issue in the instant case.

27

the beginning of the section.  Therefore, Plaintiff's repeated
reliance on the sentence, "[y]ou have the right to have the Plan
administrator review and reconsider your claim," for her claim
that CDM had an obligation to review her claim for benefits is
misplaced; the SPD's substantive provisions made clear that
"**MetLife in its discretion** has authority to interpret the terms,
conditions, and provisions of the entire contract" and that "[i]n
the event our claim has been denied in while or in part, you. . .
can request a review of your claim **by Metropolitan**."  Admin.
Record at 0029 & 0053 (emphasis added).  Evans' attempt to rest
on one section of the "Statement of ERISA Rights" out of context
overlooks the clear delegation of discretion to MetLife and
completely ignores and renders inexplicable her prior conduct.

Even construing all reasonable inferences in favor of Evans,
this Court finds that no reasonable jury would find that CDM was
responsible for the administration of LTD benefits under the
Plan.  The evidence before this Court demonstrates that the
responsibility for administering benefits and review of benefit
claims was clearly delegated to MetLife.  Moreover, the evidence,
i.e., Plaintiff's letters, written contemporaneously to the
denial of benefits, further demonstrates that she understood the
language of the SPD to mean that MetLife was responsible for
administering those claims.  Accordingly, summary judgment in
favor of CDM is appropriate.  Further, because no reasonable jury
could find in favor of Plaintiff with regard to Count I against

CDM, Plaintiff's motion for summary judgment will be denied.

**Conclusion:**

Thus, for the aforementioned reasons and for the reasons stated in this Court's oral Opinion on May 22, 2007, CDM is entitled to summary judgment on all Counts of Plaintiff's Complaint, including Count I, as discussed herein.  MetLife is also entitled to summary judgment on Count I (and Count II as discussed in this Court's Oral Opinion).  Plaintiff's motion for summary judgment is hereby denied <u>in</u> <u>toto</u>.

An appropriate Order, encompassing this Opinion and the Court's May 22, 2007, oral Opinion, will be issued on this date.

Dated: July 30, 2007                    s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge